5-9 Littlejohn v. OPM Mr. Reed, please proceed. Thank you, Your Honor. Good morning, Your Honors. My name is Daniel Reed. I'm from Durham, North Carolina. And I'm here representing Kim Littlejohn. Thank you for hearing me out. It may please the Court. There are three basic points I would like to make this morning. The first of which is that this is the kind of case that this Court has already said disturbs it in the Brunner case. Weren't you really challenging the MSPB's factual determination of whether she's disabled? Well, ultimately, that is a factual determination, Your Honor. And so, yes. I mean, obviously that's true. I think this Court said in the Van Eiken case that we cite at length that this Court has to read the record carefully and discerningly and look to make— How many thousand pounds did she lift in that week of observation? Did you look at the video? No. Okay. If you looked at the video, you showed when she's on the exercise machine, it's on the smallest bar, the 10-pound bar. And her doctor had told her she needed to condition herself and if she was ever going to return to work. So I think the Court is absolutely correct that the factual determination is at issue, but I think the record as a whole— You're arguing against the weight of the evidence. That's what this is really about. Well, I wouldn't be here if I didn't disagree with that assertion, Your Honor. Both the trial judge and the board basically dismissed vast swaths of evidence as being subjective. And I've spoken to many doctors during my career and most of them will tell you that probably 95% of medicine is in fact subjective. And all the doctors agreed that she has fibromyalgia. Dr. Latimer— I didn't read the board's decision as refusing to consider subjective evidence. I read them as weighing the evidence and finding some more credible and substantial than other evidence. But unlike Viking vials, I didn't see a determination by the board that it would not consider subjective evidence. They did not say that outright. That is correct. And in fact, they went through all the evidence and discussed it and they explained why they came to their conclusion. So I guess the concern is—I understood you to be basically agreeing with Judge Wallach— that really at heart, your decision is challenging the weight of the evidence or the board's weighing of the evidence. But unlike most MSPB appeals where we get to review that, we have a limited jurisdiction in this case. Yes, Your Honor. That's my concern. Well, and the government correctly pointed that out. But I would submit to the court that the MSPB, having read the case law, realized we can't just say we're not going to ignore this evidence. We have to say we weighed it and we found it wanting. And essentially, they repeatedly said that there's no objective evidence to support her subjective complaints. That's been naked and right on. And Dr. Latimer, in the report the government cites, said, J.A. 124, there's no way to test for fibromyalgia. And it's going to be subjective. They said they gave little weight. They didn't say— Well, that's what Dr. Latimer said, Your Honor. I understand what the MSPB said. Yes. Yeah, the MSPB says the administrative judge gave little weight to the complaints. It doesn't say no weight. All right. Yes. I believe you're correct about that. I am. Well, I would submit to you that the treating physician confirmed she met the diagnostic criteria, and the government's own expert, Dr. Mulcahy, said that because of objective findings that she did have in 2012, she couldn't return to the job that she was assigned to. The point here is not that, as in any OPM appeal, it's not that she's totally disabled. It's whether or not she can return to the job she was assigned to at the time that she last worked. The policy ground here, which I think is the Bruner case addressed, was that the employee has successfully challenged the removal from her position and been told by the arbitrator, the post office, get her some work she can do. And instead of doing that, they said, You've been away too long. We can't. There's nothing we can do. And Judge Mehring, in her decision, I think it's colorist her decision, that she says that Ms. Littlejohn has not asserted she ever attempted to return to work. Well, she can't until they tell her to come back. So Congress has set up a system, and the unions have negotiated these contracts, so that when the post office gets told to put the person back to work, they give them a report date, say come back to work. That's all they had to do if they really thought she wasn't going to come back to work. I think the court can take judicial notice that the post office often says when they're trying to cut off somebody's worker's comp benefits, we can accommodate any disability short of bed rest. Except Ms. Littlejohn, they were told by the arbitrator to put her back to work. He said, We can't do it. There's no accommodation we can make. That was what disturbed the court in Brunner, and I think that's what should disturb this court in this case, that essentially the employing agency can ignore its responsibility, which is established by law and by Congress and by its contracts with the unions, and ignore their obligation to employ an employee who has medical problems. She may not want to work. She may be exaggerating her symptoms. Millions of people hate their jobs. They go to work every day. Ms. Littlejohn went to New York, had the hearing, won, told to come back, and nope, can't do it. The nope, can't do it was citing 11 years of absence from work. And that's not what's even before us. I'm not here to decide whether or not the post office was wrong  or I'm trying to decide whether or not MSPB or OPM was correct and MSPB's affirmance of them was correct in denial of her application for disability retirement. That's what this is about, right? Whether or not she should have been denied an application for disability retirement. Well, if you focus strictly on evidence of disability, Your Honor, and you don't look at, if you consider it's in a vacuum with respect to other than that, and you have an opinion of a doctor that says there are no objective findings, which is Dr. Latimer, then you are probably correct. If that's all you do. That's the question I was just going to ask. What exactly is the role, our role in this setting? You've discussed the Postal Service saying they would not be prepared to accommodate her, but is that pertinent to the question of whether she is disabled? Well, she has to have... And if it is, in what way is it pertinent to the question that's immediately before us and is just more expressed? Well, she has to have a disability and she has to not be able to be accommodated. So, as I just said, if you focus strictly on whether or not she has a disability, then it's not really that relevant because if you say she does not have a disability, you never reach the question of whether or not she can be accommodated. But is there... Would the two issues, in effect, intersect if, in fact, she has a disability that would prevent her from coming back in full service, but would not prevent her from coming back in a light-duty type service? That is to say, she would not be disabled to perform light duty if that were available. Yeah, I agree with that. That's my argument, that essentially... But do you have... I mean, that's why... I guess I'm asking what is the question before us, whether she is disabled for purposes of performing any duty or disabled for performing full duty of her prior position, or would it be sufficient that she is able and willing to perform light duty? Well, I think the question for disability retirement, is she able to perform the duties of her last regularly assigned position, which the job description... The only job description is an arduous position that requires constant lifting and servicing of machinery. Well, that's why I'm not understanding. If you're saying that's enough to mean she's disabled, then I guess the issue of light duty doesn't have anything to do with the question of disability, right? Well, if we win that issue, then we also have to win the second issue, which is whether she could be accommodated. So I think it is relevant in that respect, Your Honor. I see. Okay. But getting back to... Isn't your core problem, as the MSPB said, the administrative judge had a chance to observe the demeanor of the witnesses and made a credibility determination as to the witness... as to the appellant and to her witness, her sister. And one of the things that was cited was a surveillance which showed the appellant driving to her physician's office and then telling her physician that she was unable to drive. Isn't that correct? I don't believe the surveillance did that, but the physician put that in his report. Yes, Your Honor. That sort of evidence is certainly sufficient to support the administrative judge's determination of lack of credibility, isn't it? It does undermine her credibility, and I believe both the board and the judge should say that, yes. But every doctor says she has fibromyalgia, including Dr. Latimer and Dr. Mulcahy. They take that for granted. That's subjective. And Dr. Mulcahy says objectively she can't go back to doing the work she was doing before. And that's a disability. You said every doctor said she's disabled. Didn't Dr. Latimer change his evaluation of her after being shown the video of her driving? He did, yes, Your Honor. But I believe I said every doctor says she has fibromyalgia, which is different. And Dr. Mulcahy did say that objectively she can't go back to that job. That is a disability, Judge Bryson, under the act. So it would be our contention that simply saying that, one, that we have considered all this evidence when, in fact, if you read it carefully, they routinely and totally dismiss all the subjective evidence, and I think just as importantly, they ignore what Dr. Mulcahy said about returning to this job. And I think that that establishes at least a disability to do the arduous task of being a postal distribution clerk, which is the only job at issue. Like I said, it would be a whole different case if the post office had said, okay, we lose, report to work in Brooklyn from North Carolina on January 5th, 2015, and see if she shows up. That's all they had to do. Thank you, Your Honor. Just one further question. What is your understanding of the scope of our review powers under Lindahl? What do you think is the – we've talked about it a bit before, but I really want to get a sense of what is the limit on what we can do. What must you – what is our avenue for granting relief for you? I think we know that we can't say we think the board's weighing of the evidence was improper, right? That certainly seems to be disclosed by the indictment. Well, I think the court said that we must be discerning and cannot be satisfied by opinions that invoke the trappings of factual analysis. So you have to read the record as a whole carefully and make sure when the MSPB and the judge say we did consider this stuff, that they did in fact consider it in the whole context of the case, which I would submit to you the whole context of the case indicates saying that she was surveilled and she was doing stuff she said she couldn't do, therefore, we shouldn't believe her, and therefore, everything that's rejected goes out the window even though every doctor agrees that it's there. May I please read? Let's hear from the defendant, Ms. Rose. May it please the court. As the court has noted, the court's jurisdiction to review disability retirement applications is limited. Factual findings regarding disability cannot be revisited by this court. Jurisdiction is limited to questions of law and whether there has been a substantial departure from an important procedural right. Here, although Ms. Littlejohn has attempted to frame this case as analogous to the van Eyck and Rael's case, scrutiny of her argument of the board's opinion here and the ALJ's opinion here as compared to what happened in van Eyck and Rael's shows that the board did weigh all of the evidence and while there was evidence that it gave little weight to, there was not a categorical disqualification of evidence. Because of that, the majority of the arguments presented by Ms. Littlejohn are simply outside of the scope of this court's jurisdiction. Ms. Littlejohn did raise one other argument, which very briefly in her brief, which we would note may invoke this court's jurisdiction where she queried if the board had applied the incorrect legal standard, putting the burden of proof on her on the accommodation element. The burden is, however, on the petitioner to prove all elements, including both disability and accommodation. And as petitioner has acknowledged today, the accommodation element would really only come into play once a disability has been established. If the court has no further questions, we rest on the arguments made in our briefs today and ask that the board's decision be affirmed. Let me ask you the same question. I do have one question. I have found over the years the Lindahl test to be a little elusive. Can you give me your take on what it is that Lindahl says we can and can't do, with an eye on Vannik and Riles, for example, as a case in which we decided Lindahl did not foreclose review? What this court can do is examine whether there was a legal error. When the board is reviewing evidence, if it makes a categorical determination, as it did in Vannik, that it needs not consider any medical evidence based primarily on subjective evidence, that's an across-the-board determination. As contrast, where it's, like it did in this case, weighing all of the evidence and making specific determinations of weight, those are the matters that this court cannot get into. But if there are creations of rules of law or a failure to, a misconstruction of legislative language, then that's where this court can be involved. And I think it's analogous to the limitations on the court's jurisdiction in the veterans' cases. There's not an ability of the court to look at the underlying factual decisions, but how the law is applied. And situations in which the board says that they are weighing particular evidence, taking particular evidence into account, but in fact the argument is that that was just window dressing. In fact, they did not take it into account. That sort of situation, you would say, falls on which side of the line, if that assertion has been made? I think then you have to look at the substance of what actually happened in the board's decision. If there is actually analysis of the evidence, then it would be an attempt to rephrase a factual determination as an issue within the court's jurisdiction. But there could be an instance where the board simply performed a blip service, and I think that's on the edge of this court's jurisdiction, and there may be instances in which that tips the matter into the court's jurisdiction. But whereas here, there is a thorough review of the evidence and explanation for the weight given to the evidence, we're solidly within matters outside the court's jurisdiction. Yes. Thank you. Thank you. Mr. Green? I think you're beating around—you're on the track that I'm trying to argue, Judge Bryson, and I've stated that in my brief. I would just like to point out one other point from the board's order at page 6. I pointed this out in my brief, that Dr. Mulcahy's opinion, considered with the other medical evidence, may relate to whether the appellant would require some accommodation. That's what a disability is, a medical condition that requires accommodation under this scheme. And as I said in my brief, it absolutely and totally relates. That's the only real question before MSBB, whether or not they applied an appropriate standard in resolving this application for disability retirement. And after dismissing all the subjective evidence, they say, Accordingly, we agree with the administrative judge's finding that the appellant has not submitted objective medical evidence that supports her subjective claims of pain and physical limitations. It's in there. Dr. Mulcahy. It's right there. That's why the post office wouldn't give her a job. So that's clearly a legal and factual conclusion that the board reached in affirming the administrative judge, and it's clearly wrong. I would submit your honors, and therefore I would ask that you reverse this. Thank you. Thank you, Mr. Reed. Thank both counsel. The case is taken under submission. That concludes our arguments for today. All rise.